IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**
**for the use and benefit of**
**JAMES B. DONAGHEY, INC.**

    **Plaintiff,**

v.                Case No. 3:08cv56/MCR/MD
                 (Lead Case/Consolidated)

**DICK CORPORATION, et al.,**

    **Defendants**.
_____/

## O R D E R

    This matter is part of a consolidated action stemming from the construction of four buildings at the Pensacola Naval Air Station. The plaintiff, United States of America, for the use and benefit of James B. Donaghey, Inc. ("Donaghey"), filed suit against Dick Corporation ("Dick") (doc. 27), the general contractor on the project, asserting claims under the Miller Act and Prompt Payment Act, as well as for breach of contract, unjust enrichment, negligence, and quantum meruit, in connection with work Donaghey performed on the project.[1] Dick asserted a counterclaim against Donaghey (doc. 166) seeking to recover liquidated damages as a result of alleged work delays.[2] Pending before the court is Donaghey's motion for summary judgment (doc. 539), to which Dick has responded in opposition (doc. 564). The court, having fully considered the record and the parties'

---

[1] In response to Donaghey's first amended complaint, Dick filed a motion to dismiss Donaghey's breach of contract, unjust enrichment, negligence, quantum meruit, and Prompt Payment Act claims. Donaghey did not oppose dismissal of its unjust enrichment and negligence claims. By order entered April 27, 2009, the Court dismissed the unjust enrichment, negligence, and Prompt Payment Act claims.

[2] In its counterclaim, Dick also alleges that Donaghey's breached the subcontract by performing defective work, failing to install work in accordance with the subcontract, procuring incorrect equipment, failing to provide adequate manpower, and failing to perform warranty work. Based on its response to Donaghey's motion, however, it appears that Dick intends to pursue only its claim regarding work delays.

arguments, concludes that Donaghey's motion should be denied.

**BACKGROUND**

Dick entered into a contract with the United States of America Naval Facilities Engineering Command ("Navy") to design and build four buildings at the Pensacola Naval Air Station.[3] In accordance with 40 U.S.C. § 3131, Dick secured a payment bond on the project in the amount of $79,017,192. Dick thereafter entered into a number of subcontracts for performance of various aspects of the work, including a subcontract with Donaghey for installation of the plumbing and HVAC systems.[4] As required by the subcontract, Donaghey submitted monthly pay applications for the work performed; Dick was to pay Donaghey within ten days of the Navy's payment to Dick. Although Donaghey alleges that numerous payments were late, it does not dispute that Dick paid all amounts due under the subcontract until October 2007, when Dick began withholding payments as a result of Donaghey's alleged work delays. In all, Dick withheld $748,690.40 from Donaghey in payments and retainage under the subcontract.[5] Donaghey filed this lawsuit seeking to recover that amount. Dick claims that it was justified in withholding the remaining payments because of extensive delays Donaghey caused at the end of the project when it was unable to provide the required test and balancing approvals ("T&B approvals") on the Visitors Quarters, preventing the Navy from taking beneficial occupancy of the buildings. In order to obtain the T&B approvals, Donaghey had to make certain repairs and modifications, including drywall demolition to re-route and replace duct work. As a result of the additional work required by Donaghey, Dick had to remain on the site to provide supervision far longer than it had anticipated. In addition to delays in completion of the Visitors Quarters, Dick claims Donaghey performed its work behind schedule throughout the course of the project, delaying successor trades and the project as a whole,

---

[3] In particular, Dick was to design and build Visitors Quarters, which consisted of two buildings; an Aviation Rescue Swimmers School; and a Physical Fitness Center.

[4] The amount of Dick's subcontract with Donaghey was $8,900,00.

[5] Although Dick claims it had a right under the subcontract to withhold payment from Donaghey, there is no provision in the subcontract expressly allowing Dick to withhold payment for work delays.

Consolidated Case No.: 3:08cv56/MCR/MD

including substantial completion of the Aviation Rescue Swimmers School. In the event of delays to the substantial completion of the buildings, the parties agreed that Dick would be awarded liquidated damages in the amount of $5,400 per calendar day for the Aviation Rescue Swimmers School and $24,898 per calendar day for the Visitors Quarters. Dick filed a counterclaim seeking a total of $1,741,374 in liquidated damages – $1,568,574 as a result of 63 days of delay on the Visitors Quarters and $172,800 as a result of 32 days of delay on the Aviation Rescue Swimmers School.

Donaghey seeks summary judgment as to its claims against Dick and Dick's counterclaim against it. In support of its Miller Act and breach of contract claims, Donaghey argues that it is entitled to summary judgment as a matter of law because it completed its scope of work under the subcontract, as evidenced by the fact that the Navy accepted its work and did not withhold any payments from Dick under the prime contract. Insofar as Dick's counterclaim is concerned, Donaghey urges the court to find the liquidated damages provision unenforceable, arguing that the liquidated damages provision was a "pass through" provision and that, because the Navy did not assess liquidated damages against Dick, Dick is not entitled to assess liquidated damages against Donaghey. Donaghey further argues that, due to extensions granted by the Navy, it timely completed its work, as a result of which there was no delay triggering the liquidated damages provision, or alternatively, that it caused at most a seven day delay in completion of the Visitors Quarters. Finally, Donaghey contends that the liquidated damages provision constitutes an unenforceable penalty that, even if valid, would be unconscionable to apply in this case given the amount of Dick's actual damages.[6] In response to Donaghey's motion, Dick maintains that it was entitled to withhold payments as a result of Donaghey's work delays and that the liquidated damages to which it is entitled exceed the amount Donaghey is seeking in damages under its claims. In support of its counterclaim, Dick points to the absence of "pass through" language in the liquidated damages provision and the fact that the subcontract, as a whole, and the liquidated damages provision, in

---

[6] Dick determined that it incurred $1,621,499.22 in actual damages as a result of work delays caused by five subcontractors, including Donaghey. Dick attributes $548,221.42 of that amount to Donaghey.

particular, were carefully negotiated between the parties because actual damages were not readily ascertainable at the time the subcontract was entered into. Although Dick acknowledges that the Navy granted extensions of time under the contract, it argues that those extensions did not pertain to Donaghey's scope of work and, in any event, did not change the milestone completion dates. In the event the court finds the liquidated damages provision unenforceable, however, Dick argues that the court should invoke its equity powers and award it actual damages.[7] For the reasons set forth below, the court finds the liquidated damages provision enforceable and that there are genuine issues of material fact with regard to Donaghey's Miller Act and breach of contract claims, precluding the entry of summary judgment.

**DISCUSSION**

A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a

---

[7] The liquidated damages provision includes a waiver of actual damages.

Consolidated Case No.: 3:08cv56/MCR/MD

genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

B. Donaghey's Claims

1. Breach of Contract

In order to prevail on its breach of contract claim, Donaghey must prove (1) there was a valid contract; (2) Dick breached the contract; and (3) Donaghey suffered damages as a result of Dick's breach. *See Rollins Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). Although the parties do not dispute there was a valid subcontract, they strongly dispute whether Dick breached the subcontract in withholding payments from Donaghey. Whether Dick breached the subcontract depends on whether Donaghey performed all of its obligations under the subcontract, including timely completion of its work. *See Marshall Const., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So. 2d 845, 848 (Fla. 1st DCA 1990) (holding that, "in order to maintain an action for breach of contract, a claimant must first establish performance on its part of the contractual obligations imposed in the contract"). As both Donaghey's motion and Dick's response make plain, a genuine issue of material fact exists in that regard, as a result of which summary judgment must be denied as to this claim.

2. Miller Act

The Miller Act requires a Government contractor to post a surety bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person." 40 U.S.C. 3131(b)(2). Under the statute, a subcontractor who has not been paid within 90 days after the day on which it did or performed the last of the labor . . . for which claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1). To establish a prima facie case under the Miller Act, a plaintiff must prove

(1) that materials and/or labor were supplied in carrying out the work provided for in the contract; (2) that the supplier has not been paid; (3) that the supplier had a good faith belief that the materials and/or labor were for the specified work; and (4) that jurisdictional requisites are met. *U.S. for Use and Benefit of Krupp Steel Prods., Inc. v. Aetna Ins. Co.*, 831 F. 2d 978, 979 (11th Cir. 1987). The record clearly demonstrates that Donaghey provided labor and materials in carrying out work provided for under the subcontract and that it in good faith believed that the labor and materials were for the specified work. The court thus has little trouble finding that Donaghey has satisfied the first and third elements of its Miller Act claim. Given the parties' positions and the evidence in the record, however, the second element cannot be determined on summary judgment. As the Eleventh Circuit has noted, in enacting the Miller Act, "'[i]t was not the intention of Congress to extend or enlarge the liability of the surety . . . beyond the contractual or quasi-contractual obligations of the contractor who remains primarily liable.'"[8] *U.S. for Use and Benefit of E. Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 781 (11th Cir. 1990) (quoting *U.S. ex rel. Harrington v. Trione,* 97 F. Supp. 522, 526 (D.C. Colo. 1951).[9] In considering a Miller Act claim, the trier of fact must thus look to the subcontract to determine the amount due. *Id.* at 439. "[I]f the subcontract provides for a condition precedent to payment, or a part thereof, which is not fulfilled, the subcontractor cannot recover labor and material expenditures against the surety on the payment bond." *Trione*, 97 F. Supp. at 526. In other words, if there has been a default by the subcontractor, the general contractor may assert recoupment or

---

[8] As originally enacted, the Miller Act allowed for recovery only of amounts "justly due." Although that language was not included in the amended version of the Act, the amendments "were not intended to change the substance of the Act." *U.S. for the Use and Benefit of Acoustical Concepts, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 635 F. Supp. 2d 434, 439 n.6 (E.D. Va. 2009).

[9] "In general, a surety assumes the liability of its principal." *Travelers*, 635 F. Supp. 2d at 437. "That this general principle of suretyship law ordinarily applies with equal force to Miller Act sureties is made clear by the language of the statute, which creates a cause of action against the surety to the extent a subcontractor 'has not been paid in full' and allows the subcontractor to recover only 'the amount unpaid.'" *Id.* (quoting 40 U.S.C. § 3133(b)(1)).

Consolidated Case No.: 3:08cv56/MCR/MD

setoff as a defense. *See id.*[10] Because there is a genuine issue of material fact regarding the timeliness of Donaghey's performance and, therefore, Donaghey's entitlement to the amounts withheld by Dick, summary judgment is inappropriate as to Donaghey's Miller Act claim.

C.   Dick's Counterclaim

As both parties acknowledge, the dispute between Donaghey and Dick hinges largely on the enforceability of the liquidated damages provision in the parties' subcontract. In the event the liquidated damages provision is enforceable, Dick may be entitled to damages in an amount exceeding the damages claimed by Donaghey; if the liquidated damages provision is not enforceable, Dick may not be entitled to any damages as a result of Donaghey's alleged delays.[11] "In Florida, the law is well-settled that the parties to a contract may agree in advance on an amount to be paid or retained as liquidated damages if the contract is breached." *Mineo v. Lakeside Village of Davie, LLC*, 983 So. 2d 20, 21

---

[10] *See also U.S. for Use and Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 762 (9th Cir. 1984) (recognizing setoff as a defense under the Miller Act and the proper subject of a counterclaim against a plaintiff in privity of contract with the general contractor); *U.S. for the Use and Benefit of Fed. Roofing and Painting, Inc. v. Foster Constr. (Panama) S.A.*, 456 F.2d 250, 251 (5th Cir. 1972) (holding that the general contractor was entitled to withhold payment from the subcontractor for damages it incurred as a result of the subcontractor's delay); *H.B. Zachary Co. v. Travelers Indem. Co.*, 391 F.2d 43, 48 (5th Cir. 1968) (recognizing nonperformance as a defense to a Miller Act claim); *U.S. ex rel. Andrews Marine Servs., Inc. v. United Sur. & Indem. Co.*, 2005 WL 1308919, at *7 (D. P.R. June 1, 2005) (unpublished) (noting that "disallowing recoupment would seem to give the supplier 'rights' to which his contract does not entitle him" and holding that "a surety company standing in the shoes of the contractor is entitled to recoup the value of any defective or incomplete performance"); *U.S. for Use of Ascher Bros. Co., Inc. v. Am. Home Assur. Co.*, 2003 WL 1338020, at *19 (N.D. Ill. Mar. 18, 2003) (recognizing setoff as a defense under the Miller Act); *U.S. ex rel. Hussmann Corp. v. Fidelity & Deposit Co. of Maryland*, 999 F. Supp. 734, 747-48 (D.N.J. 1998) (recognizing recoupment as a defense under the Miller Act and finding that, in order to recover on a Miller Act claim, a subcontractor must prove that it was justly entitled to the outstanding sums); *U.S. for Use and Benefit of Arlmont Air Condition Corp. v. Premier Contractors,* Inc., 283 F. Supp. 343, 348, N.7 (D. C. Me. 1968) (holding, in a Miller Act case, that state law determines the substantive rights of the parties under their contracts and that "[i]t is axiomatic in the law of contracts that a party cannot recover on his contract unless he can show substantial performance of his own obligations under the contract or that performance was made impossible by the breach of the other party" and concluding that the subcontractor's material breach of contract justified the general contractor's termination of the contract).

[11] As mentioned, the liquidated damages provision contains a waiver of actual damages. Dick argues that it would not have waived its right to actual damages if it had known that Donaghey would challenge the enforceability of the liquidated damages provision and that, even if the waiver was effective and the liquidated damages provision is deemed unenforceable, the court should award it actual damages as a matter of equity.

Consolidated Case No.: 3:08cv56/MCR/MD

...

(Fla. 4th DCA 2008). The Florida Supreme Court has established a test to determine if a liquidated damages clause will be upheld, or if it will be stricken because it is a actually a penalty clause." *Id.* (citing *Hyman v. Cohen*, 73 So. 2d 393 (Fla. 1954)). "First, the damages upon a breach must not be readily ascertainable." *Id.* "Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages." *Id.* at 21-22. Even if a liquidated damages provision is enforceable, the court may refuse to award liquidated damages if circumstances at the time of breach demonstrate that it would be unconscionable to allow the non-breaching party to recover the sum in question. *See Parrish v. Dougherty*, 505 So.2d 646, 649 (Fla. 1st DCA 1987); *Hutchison v. Tompkins*, 259 So. 2d 129, 132 (Fla. 1972).[12]

Although the liquidated damages Dick claims are far in excess of its actual damages, the court finds that the actual damages resulting from Donaghey's work delays were not readily ascertainable at the time the parties entered into the subcontract. As Dick argues in its response, although it was able to calculate the administrative costs it would incur in the event of a delay, administrative costs were only one of many factors that could have caused damage to Dick in the event of a work delay by Donaghey. There were a number of additional factors that could have resulted in damages to Dick, at least some of which were not readily ascertainable at the time the parties entered into the subcontract.[13] It is for that reason the parties negotiated and agreed upon a liquidated damages

---

[12] "The [Florida] supreme court has identified two factors that support the finding that a forfeiture is unconscionable: (1) that the buyer's 'failure to fulfill the contract was due to any misfortune beyond his control' and (2) that the seller received a benefit, 'the retention of which was shocking to the conscience of the court.'" *Hot Developers, Inc. v. Willow Lake Estates, Inc.*, 950 So. 2d 537, 541 (Fla. 4th DCA 2007) (quoting *Beatty v. Flannery*, 49 So. 2d 81, 82 (Fla.1950)).

[13] For example, as Dick points out, Donaghey's delays could have delayed other trades and resulted in costs and possibly even damages that could not have been ascertained at the time the subcontract was entered into.

provision.[14] Not only were Dick's damages as a result of delay not ascertainable at the time the parties entered into the subcontract, but they also were not grossly disproportionate to damages that might reasonably be expected to follow from Donaghey's work delays. Indeed, had the Navy assessed liquidated damages against Dick as a result of Donaghey's delays, Dick's actual damages could have exceeded its liquidated damages. The court therefore finds that the liquidated damages provision in the parties' subcontract is valid and enforceable.[15] *See U.S., for the Use and Benefit of Sunbeam Equip. Corp. v. Commercial Constr. Corp.*, 741 F.2d 326, 328 (11th Cir. 1984) (holding that the fact that they Navy did not assess liquidated damages against a general contractor would not preclude the general contractor from recovering liquidated damages against subcontractor

---

[14] Although the liquidated damages provision in the subcontract contains figures identical to those provided for in the prime contract, it is clear that the figures were negotiated between the parties in an arm's length transaction as to which Donaghey was represented by counsel. In fact, in the course of the parties' negotiations, Donaghey proposed certain liquidated damages amounts that were rejected by Dick before the parties agreed to the amounts set forth in the subcontract.

[15] The fact that the parties negotiated the amount of liquidated damages undermines Donaghey's argument that the liquidated damages provision was intended as a "pass through" provision, as does the absence of "pass through" language in the liquidated damages clause. The interpretation of an unambiguous contract is a matter of law. *See Lawyers Title Ins. Corp. v. JDC (Am.)Corp.*, 52 F.3d 1575, 7580 (11th Cir. 1995). The court determines the parties' intent from the four corners of the contract and only considers extrinsic evidence to explain or clarify ambiguous or unclear language. *See Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009); *Ospina-Baraya v. Heiligers*, 909 So. 2d 465, 472 (Fla. 4th DCA 2005). The court finds no ambiguity in the liquidated damages provision. Although the amount of liquidated damages in the subcontract coincides with the amount of liquidated damages in the prime contract, there is no indication in the subcontract that the parties intended Donaghey's liability for liquidated damages to be dependent upon the Navy's assessment of liquidated damages against Dick. Had they so intended, they clearly could have included "pass through" language in the liquidated damages clause as they did in two other provisions in the subcontract. Because the parties did not include such a condition in the liquidated damages provision, the court cannot now impose it. *See State Farm Life Ins. Co. v. Florida Asset Fin., Corp.*, 786 So. 2d 1, 3 (Fla 4th DCA 2000) (holding that "[w]here a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted") (internal quotations omitted); *Sterling Investor Servs., Inc. v. 1155 Nobo Assocs., LLC*, 818 N.Y.S.2d 513, 516 (N.Y. 2006) (noting that, "[u]nder accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional"); *see also Foster Constr.*, 456 F.2d at 251(holding that the amount of liquidated damages in the prime contract did not govern the general contractor's claim against the subcontractor in the absence of language in the subcontract adopting the liquidated damages in the prime contract as the measure of damages for breach of the subcontract, even though the subcontract contained a clause providing that the parties generally would assume the correlative positions of the parties in the prime contract).

Consolidated Case No.: 3:08cv56/MCR/MD

if the general contractor could demonstrate that damages arising out of the subcontractor's delay were not otherwise compensated). Whether circumstances existed at the time of breach rendering enforcement of the liquidated damages provision unconscionable is a question of fact to be decided at trial. *See Multitech Corp. v. St. Johns Bluff Inv. Corp.*, 518 So. 2d 427, 432 (1st DCA 1988) (holding that "a liquidated damages clause will not be enforced if circumstances at the time of the breach indicate it would be unconscionable to do so"); *see also MTM Television Distrib. Group, Ltd. v. Pub. Interest Corp.*, 1992 WL 80625, at *1 (M.D. Fla. Mar. 24, 1992) (holding that "the question of whether the damages provision is so high as to be considered unconscionable is clearly a question of fact").

**CONCLUSION**

Accordingly, it is hereby ORDERED that Donaghey's 'motion for summary judgment (doc. 539) is **DENIED.**

**DONE AND ORDERED** this 9th day of November, 2010.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**